United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1364

_____

Shirley M. Harvell; Emmanuel Lofton,    *
Reverend; Hattie Middlebrook; Mary    *
Alice Jones; Jacquelin Henton,    *
   *
       Appellees,    *
   *
       v.    *
   *
Blytheville School District No. 5, a    *
Public Body Corporate; William    *
Tomlinson, Individually and as Board    *
Member; Norvell Moore, Individually    *
and as Board Member; William Sullivan,  *   Appeals from the United States
Individually and as Board Member;    *   District Court for the
Harold Sudbury, Jr., Individually and    *   Eastern District of Arkansas
as Board Member; Helen Nunn, Dr.,    *
Individually and as Board Member;    *
Karen Fraser, Individually and as Board  *
Member; Steve Littrell, Individually and  *
as Board Member; William Stovall, III,  *
Individually and as Board Member;    *
Blytheville School District No. 5,    *
Board of Directors, also known as Bill   *
Stovall; Frank Ladd, Dr., Individually   *
and in his official capacity as    *
Superintendent of Blytheville School   *
District No. 5,    *
   *
       Appellants.    *

_____

No. 97-1448
_____

Shirley M. Harvell; Emmanuel Lofton,   *
Reverend; Hattie Middlebrook; Mary   *
Alice Jones; Jacquelin Henton,   *
  *
      Appellants,   *
  *
      v.   *
  *
Blytheville School District No. 5, a   *
Public Body Corporate; William   *
Tomlinson, Individually and as Board   *
Member; Norvell Moore, Individually   *
and as Board Member; William Sullivan, *
Individually and as Board Member;   *
Harold Sudbury, Jr., Individually and   *
as Board Member; Helen Nunn, Dr.,   *
Individually and as Board Member;   *
Karen Fraser, Individually and as Board *
Member; Steve Littrell, Individually and *
as Board Member; William Stovall, III,   *
also known as Bill Stovall, Individually   *
and as Board Member; Blytheville   *
School District No. 5, Board of   *
Directors; Frank Ladd, Dr., Individually *
and in his official capacity as   *
Superintendent of Blytheville School   *
District No. 5,   *
  *
      Appellees.   *

_____

Submitted:  June 9, 1997

Filed:   September 25, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
     WOLLMAN, Circuit Judge.

_____


WOLLMAN, Circuit Judge.

In Harvell v. Blytheville School District #5, 71 F.3d 1382 (8th Cir. 1995) (en banc), cert. denied, 116 S. Ct. 1876 (1996), we held that the plaintiffs had proved that the at-large majority-vote electoral scheme implemented in 1987 for the Blytheville school board violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (the Act). We remanded the case to the district court[1] for entry of an appropriate remedial decree. Id. at 1391.  The school district appeals from the decree entered on remand.  The plaintiffs have cross-appealed from the district court's refusal to order a special election.  We affirm.

On remand, the plaintiffs and the school district each proposed remedial redistricting plans.  According to 1990 census data, blacks account for 37.5% of Blytheville's population; the total black voting age population (BVAP) of the district is 31.04%.  The school district proposed the "5-2 plan," which called for a seven-member school board consisting of five representatives elected from single-member

_____

[1]The Honorable Steven M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

-3-

districts and two members elected at-large.[2] Under the 5-2 plan, two of the single-member zones would have a BVAP of greater than 60%. The plaintiffs proposed the "Lynch plan,"[3] which called for an eight-member school board consisting of representatives elected from eight single-member districts. Under the Lynch plan, three of the districts would be majority-minority districts, having a BVAP of 57.3% or higher.

We concluded our en banc opinion by cautioning that the district court should "steer clear of the type of racial gerrymandering proscribed in Miller [v. Johnson, 115 S. Ct. 2475 (1995)], while keeping in mind the need to vindicate the rights of the minority voters," 71 F.3d at 1391. Referring to this admonition, the district court indicated that it felt compelled to implement the Lynch plan. The district court expressed its concern that race was the only reason for the redrawing of the districts. The court also stated that it read our en banc opinion as prohibiting the adoption of any election scheme composed in whole or in part of an at-large voting component. The court went on to conclude, however, that the Lynch plan did not represent an exercise in racial gerrymandering, finding that the districts created thereunder were compact in nature and followed natural boundaries, streets, and neighborhoods. Accordingly, the court ordered that the Lynch plan be implemented as soon as practicable.

A state's redistricting responsibility "should be accorded primacy to the extent possible when a federal court exercises remedial power." Lawyer v. Department of Justice, 117 S. Ct. 2186, 2192-93 (1997). See also Abrams v. Johnson, 117 S. Ct. 1925, 1933 (1997); Upham v. Seamon, 456 U.S. 37, 42-43 (1982). The district court need not defer to a state-proposed remedial plan, however, if the plan does not

---

[2]This plan was prepared in accordance with Ark. Code Ann. § 6-13-631(b)(1)(A). See Harvell, 71 F.3d at 1390 n.10.

[3]Named for James Lynch, who prepared the eight-member plan on behalf of the plaintiffs.

completely remedy the violation or if the plan itself violates section 2 of the Act. Williams v. City of Texarkana, Ark., 32 F.3d 1265, 1268 (8th Cir. 1994).

Although we agree with the school district that the district court erred in reading our en banc opinion as foreclosing any election plan that included an at-large voting component, we do not agree that this misapprehension vitiates the district court's decision to adopt the Lynch plan. The district court acknowledged its duty to adopt a plan that would steer clear of racial gerrymandering and yet would vindicate the rights of the minority voters within the Blytheville School District. Given the history of voting practices within the school district, we cannot say that the district court erred in finding that the adoption of the Lynch plan was necessary to accomplish both goals.

The school district acknowledges that proportionality is not a safe harbor, see Johnson v. De Grandy, 512 U.S. 997, 1017-1021 (1994), but argues that the proportionality created by the two majority-minority districts in its proposed 5-2 plan alters the totality of the circumstances to such an extent that the inclusion of two at-large districts does not violate Section 2 of the Act. The two majority-minority districts would represent 28.5% of the school board, which is less than the BVAP of 31.04% and the total black population of 37.5%. Even assuming that 28.5% of the school board is relatively proportional to 31.04% BVAP, such proportionality does not preclude a finding of a Section 2 violation. See Harvell, 71 F.3d at 1388. We previously found racially polarized voting in Blytheville and the lack of a legally significant white cross-over vote, and we noted that the previous at-large election scheme removed the potential for minority-preferred candidates winning on the basis of a split white vote. See id. at 1387, 1389-90. The inability of black voters to affect the at-large elections under the 5-2 plan is no different from what it was under the previous electoral scheme. The 5-2 plan thus creates an inequality in opportunity for black voters to "participate in the political process and to elect representatives of their choice." 42 U.S.C. §1973(b); see Thornburg v. Gingles, 478 U.S. 30, 47 (1986); Harvell, 71 F.3d at 1389-91.

The school district alleges that the Lynch plan violates the Equal Protection Clause because race was the overriding criterion used in drawing the eight district boundaries.  See Shaw v. Reno, 509 U.S. 630, 649 (1993).

To prove such a claim, it must be shown "either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor" motivating the placement of "a significant number of voters within or without a particular district."  Miller, 115 S. Ct. at 2488.  Strict scrutiny does not apply, however, merely because majority-minority districts were intentionally created or the district lines were drawn with consciousness of race.  See Bush v. Vera, 116 S. Ct. 1941, 1951 (1996) (plurality opinion).  There is a distinction between "being aware of racial considerations and being motivated by them," and the awareness of race does not mean that it predominated in the redistricting process.  Miller, 115 S. Ct. at 2488.  Where traditional districting principles such as compactness, contiguity, and respect for political subdivisions or communities with actual shared interests have not been subordinated to race, there is no equal protection violation.  See id..

As indicated above, the district court found that the districts created under the Lynch plan had not been "drawn in such a bizarre manner as to constitute the type of racial gerrymandering proscribed in Miller . . . ."  The court found that the districts "are generally compact in nature and follow natural boundaries, streets, and neighborhoods."

Our review of the district boundaries established by the Lynch plan satisfies us that the district court did not err in making these findings.  The districts do not resemble the bizarre shapes that were present in other cases.  See Shaw, 509 U.S. at 635-36; Miller, 115 S. Ct. at 2484, 2496; Bush, 116 S. Ct. at 1965-67.  The districts do not split voting precincts or other political units.  Cf. Bush, 116 S. Ct. at 1959; Miller, 115 S. Ct. at 2484; Shaw, 509 U.S. at 636.  The Lynch plan was drawn against a background of no pre-existing boundary lines, because there never before had been districts in

-6-

Blytheville. Lynch testified that there were "four or five criteria that I try to make fit in any kind of plan, and it's tedious work, but it can be done." He testified that those criteria included developing majority black districts and avoiding dilution of the black vote, complying with the one-person one-vote requirement, maintaining compactness in districts, using existing natural and political boundaries, and districting voters in accordance with the organization of the county clerk's voter registration records.

It is clear beyond question that the Lynch plan takes race into account. The plan does not reject traditional, non-racial districting criteria, however. The circumstances surrounding the drawing of the Lynch plan are not akin to the situations in Miller and Shaw v. Hunt, 116 S. Ct. 1894 (1996), where the pressure from the Department of Justice to maximize majority-minority districts (*i.e.* race) was the sole reason for drawing the boundary lines as they were, or the situation in Bush, where, although mixed motives were involved, race predominated over traditional districting criteria. See Miller, 115 S. Ct. at 2489-90; Shaw, 116 S. Ct. at 1901; Bush, 116 S. Ct. at 1952-60. This case is also unlike Abrams, in which the district court, in the course of devising a remedial plan, found that a second majority-minority district could not be drawn unless race was the only factor used in drawing district lines. See Abrams, 117 S. Ct. at 1934. As we pointed out in our en banc opinion, the black community in Blytheville is compact and politically cohesive and the minority voters vote as a bloc. See Harvell, 71 F.3d at 1386-87. In creating majority-minority districts, the Lynch plan thus preserves communities with actual shared interests. Cf. Miller, 115 S. Ct. at 2490 (lack of actual shared interests).

We conclude, therefore, that the district court did not err in adopting the Lynch plan and in rejecting the school district's 5-2 plan.

The plaintiffs have cross-appealed, challenging the district court's refusal to order a special election and generally challenging the pace of implementation. Because no stay of the district court's order has been issued, the September 1997 school board

elections will be held under the terms of the district court's order. Thus the cross-appeal is essentially moot.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.